authorized to sell under the December Plan to 230,000 a month.  In total, Mozilo was able to sell 580,000 shares each month as a result of the 2006 Plans.

669.   During the March 7, 2008 Congressional Hearing, Mozilo's only explanation for the massive exercise of his vested options between November 2006 and the end of 2007 was to "reduce [his] holdings because of [his] retirement."  This excuse is inconsistent with the facts.  Just days before adopting his October Plan, Mozilo signed an agreement on October 20, 2006 to continue his employment for more than three years.

670.   Experts and investors have been extremely critical of Mozilo's suspicious trading and Rule 10b5-1 plan manipulations.  As reported in a September 29, 2007 Los Angeles Times article, experts commented that, although trading plans usually protect executives against allegations that they traded on inside information, Mozilo weakened his insider trading defense by making changes in a relatively short period of time. Experts have further stated that Mozilo's trading "stands out" and "raises a slew of red flags" because he adopted a new trading plan several weeks after the October Plan, revised that plan approximately only month later, a leading independent source for analysis of North America corporate governance and executive compensation and then revised the December Plan about seven weeks thereafter.

671.   In this regard, Nell Minow, editor of the Corporate Library, stated that Mozilo's decision to adopt several trading plans in late 2006 and then to change the December Plan in February 2007, "stands in sharp contrast to what her organization

typically sees."  Retired SEC enforcement attorney, Hilton Foster, also stated "[w]hat sets off alarms is when insiders step up their stock purchases in advance of a run-up, or accelerate their sales before the stock tanks."

672.   Mozilo's trading after October 2006 was also one of the main areas of concern at the March 7, 2008 Congressional Hearing.  With respect to Mozilo's stock trading plans and "good timing," the House Committee Chairman, Rep. Henry Waxman, stated: "what is most unusual about these sales may be that they occurred at the same time that Countrywide decided to spend $2.5 billion to buy its stock back."  In asking Mozilo to explain how his sales helped the shareholders, Waxman stated:  "You were using shareholder and borrowed money to buy back Countrywide stock and keep the price up at the same time you were selling your own personal shares."

673.   Nell Minow of the Corporate Library was also a witness at the March 7, 2008 Congressional Hearing.  When asked about Mozilo's stock sales occurring at the same time Countrywide was buying back stock, Minow found that "to be possibly the most deeply concerning of all facts that have come about his pay package."

674.   On June 4, 2009, the SEC commenced the SEC Action against Defendants Mozilo, Sambol and Sieracki for their alleged violations of the federal securities laws.  The lawsuit was the culmination of an extensive investigation by the SEC into the conduct of the Individual Defendants prior to and during the Relevant Period.  The SEC complaint charges Defendant Mozilo with significant insider trading during the Relevant

Period and modification of his Rule 10b5-1 sales plans while in the possession of material, nonpublic information.

675. In the SEC Action, the Commission alleges, among other things, that Defendant Mozilo: (i) possessed material non-public information when he established his 10b5-1 plans; (ii) amended certain of his 10b5-1 plans while possessing material non-public information; and (iii) recognized proceeds exceeding $139 million based upon stock sales and option exercises from November 2006 through October 2007. The Court denied Defendant Mozilo's motion to dismiss the SEC's insider trading claim against him.

676. As demonstrated below, Defendant Sambol sold 36,125 shares of Countrywide stock for proceeds of approximately $1.3 million during the Relevant Period at artificially inflated prices. All of Defendant Sambol's Relevant Period sales were suspicious because they were made pursuant to a Rule 10b5-1 plan adopted on May 20, 2007, just four days after the start of the Relevant Period. As demonstrated by, among other things, the May 18, June 1 and September 26, 2006 e-mails that he received from Defendant Mozilo, Defendant Sambol established his 10b5-1 plan while in possession of material non-public information.

## DAVID SAMBOL, PRESIDENT AND COO:
## RELEVANT PERIOD SALES

| Date | No. of Shares Sold | Price Per Share | Proceeds |
|---|---|---|---|
| 6/6/2007 | 6,375 | $38.99 | $248,571 |
| 6/14/2007 | 6,375 | $37.79 | $240,883 |
| 6/19/2007 | 6,375 | $38.45 | $245,127 |
| 6/27/2007 | 4,250 | $35.96 | $152,813 |
| 7/3/2007 | 4,250 | $37.02 | $157,330 |
| 7/13/2007 | 4,250 | $36.50 | $155,131 |
| 7/19/2007 | 4,250 | $35.26 | $149,855 |
| **Total** | **36,125** | | **$1,349,710** |

677.   During the Relevant Period, Defendant Sieracki sold approximately 2,902 shares of his Countrywide stock for proceeds of approximately $113,000, while in possession of material information about Countrywide, which had not been disclosed to the investing public, including Plaintiffs.

**2.    The Individual Defendants Were Motivated to Engage in Massive Stock Buy-Back Programs in Order to Inflate the Company's Stock Price and Conceal the Company's True Loss Exposure**

678.   In order to inflate Countrywide's stock price to maximize the proceeds of their insider selling, Defendants caused Countrywide to engage in two stock buy-back programs -- one in November 2006 and a second in May 2007.

679.   On October 24, 2006, Countrywide announced that it would engage in the Company's first-ever share buy-back program starting in November 2006.  Pursuant to this stock buy-back program, Countrywide purchased 60 million shares of its common

stock on the open market for $39 per share, or $2.4 billion in total. As noted above, the Company did not use its own cash to repurchase the stock. Rather, Defendants financed the acquisition using investor money, through the issuance of junior subordinated debentures.

680. On May 16, 2007, the beginning of the Relevant Period, Countrywide announced that it would consummate the May 2007 Debentures Offering, the proceeds of which were used, in part, to fund the Company's second buy-back of up to 23 million additional shares of Countrywide common stock for approximately $900 million.

681. The Individual Defendants were further motivated to engage in the stock buy-back programs to make the Company appear financially healthier than competitors in light of a rapidly deteriorating credit market. The two buy-back programs served as an indicator of Countrywide's supposed financial health and helped to conceal the Company's true bleak financial condition.

682. The buy-back programs portrayed Countrywide as financially strong by showing more favorable financial ratios to generate investor confidence in the Company. Specifically, when the Company repurchased its shares on the open market, it reduced the number of shares outstanding, which led to an increase in earnings per share ("EPS"), a strong indicator of shareholder value. An increase in EPS also leads to a lower price-earnings ratio, another positive market indicator. A company engaging in a buy-back program also reduces the value of its assets on its balance sheet, resulting in an

increase of Return on Assets and Return on Equity ("ROE").  The market views such increases positively.

683.  As a result, these strong market indicators drove the Company's share prices up.  Indeed, on October 30, 2006, before the commencement of Countrywide's first buy-back program, National Mortgage News reported that "analysts [] said Countrywide's share buyback will help to support the stock."

684.  Moreover, as noted above, Defendant Mozilo suspiciously altered his 10b5-1 trading plan around the time of significant stock repurchases by the Company, when Countrywide stock was selling at an all-time high.

### 3. The Individual Defendants Were Motivated to Artificially Inflate the Value of Countrywide's Stock To Receive Massive Incentive-Based Compensation

685.  The Individual Defendants were further motivated to conceal the Company's true subprime exposure to maximize their own compensation, which was based almost exclusively upon the Company's financial performance.

686.  The Proxy Statement on Form 14A filed with the SEC on April 27, 2007 for the period ended December 31, 2006 (the "2006 Proxy") disclosed that 80 to 90% of the Individual Defendants' total compensation was based almost exclusively on Countrywide's diluted EPS.  By failing to disclose, or recklessly disregarding, the true nature of the Company's subprime risk exposure and avoiding credit rating downgrades, which would substantially limit the Company's access to funding for new loans, Defendants were able to achieve their EPS and ROE goals.  Accordingly, the Individual

Defendants profited personally from enormous incentive awards and bonuses tied to the Company's expanding subprime loan originations.

687.   Defendant Mozilo's total compensation for 2007 was $10.8 million.  On top of his $1.9 million salary, Mozilo's received $7.6 million in performance-based restricted stock units and stock options and $1.3 million in other compensation in 2006.

688.   Defendant Mozilo's historical compensation was exorbitant.  His total compensation for 2006 was $51.8 million.  In comparison, CEOs of significantly larger, global financial institutions such as BofA Securities, Citigroup Inc. and JPMorgan Chase & Co. in 2006 were paid $28 million, $26 million and $39 million, respectively.  In addition to his $2.9 million salary for 2006, Defendant Mozilo received $1.1 million in stock awards, $23 million in option awards, $20.5 million in incentive awards and bonuses and $654,166 in other compensation.

689.   According to the 2006 Proxy, Defendant Mozilo's annual incentive award for 2006 was calculated by multiplying the previous year's incentive payment by a ratio equal to the current year's EPS divided by the immediately preceding year's EPS.  This formula was designed to compensate Defendant Mozilo for year-over-year EPS growth.

690.   Commenting on Defendant Mozilo's compensation, the Corporate Library reiterated its "very high concern" rating on Countrywide.  In this regard, the Corporate Library stated "any board which can make such poor decisions about a CEO's compensation package is almost certain to [be] making poor decisions elsewhere in its range of responsibilities."

691.   The negotiation of Mozilo's October 20, 2006 Extension Agreement was another concern discussed at the March 7, 2008 Congressional Hearing, which revealed that Countrywide hired Ross Zimmerman of Exequity in 2006 to give, "compensation advice" to the Board regarding Defendant Mozilo.  Zimmerman concluded that Mozilo's pay was significantly inflated.

692.   Instead of following the advice of the consultant it hired, Countrywide's Board hired and paid for another compensation consultant, John England from Towers Perrin, to represent Mozilo's interests in negotiating his 2007 compensation.  Even though Countrywide was paying for this additional consultant, documents produced for the March 7, 2008 Congressional Hearing showed that England was, in fact, acting as a personal advisor to Mozilo.  In particular, in an e-mail from England to Mozilo, England expressed his concern that the Board's proposal lowered Mozilo's maximum opportunity by lowering the target bonus and reducing the maximum bonus.

693.   Defendant Sambol was also handsomely rewarded for concealing the true credit risks and resulting losses to the Company.  Sambol's total compensation for 2007 was $10.4 million.  In addition to his $1.4 million salary, Sambol received $5.8 million in performance-based restricted stock units and stock options, a promotion cash bonus of $2.6 million, and $600,000 in other compensation.

694.   Sambol's total compensation for 2006 was almost $12 million.  On top of his $1.2 million salary, Defendant Sambol received $26,118 in stock awards, $5.1 million in option awards, $5.3 million in incentive awards and bonuses and $461,194 in

other compensation in 2006.  According to the 2006 Proxy, Defendant Sambol's incentive award for 2006 was based entirely on Countrywide's financial performance as determined by EPS and return on equity.

695.  Defendant Sieracki's approximate compensation for 2007 was $2.9 million. In 2006, Defendant Sieracki received total compensation of $2.6 million, including his $658,333 salary, $593,660 in option awards, $856,350 in incentive awards and bonuses and $497,702 in other compensation.  According to the 2006 Proxy, Defendant Sieracki's incentive award for 2006 was tied to the Company's EPS performance.

## XI.   LOSS CAUSATION

696.  The material misrepresentations and omissions detailed above had the effect of creating and maintaining artificially-inflated prices for the Debentures throughout the Relevant Period.  Plaintiffs purchased Countrywide Debentures at prices artificially inflated by Defendants' misrepresentations and omissions of material fact alleged herein. Those misrepresentations and omissions of material fact that were not immediately followed by an upward movement in the prices of the Debentures served to maintain the Debentures' prices at artificially inflated levels.

697.  The Debentures' value declined in direct response to Defendants' partial disclosures of previously misrepresented and/or concealed material facts.  Specifically, Defendants' gradual revelation of the truth concerning Countrywide's business and operations, the quality of its loan portfolio, and the Company's liquidity position removed portions of the artificial inflation in the Debentures' prices.  As alleged above

in Section VII, Defendants made these partial disclosures on July 24, 2007, August 9, 2007, August 16, 2007, August 27, 2007, September 7, 2007, October 24, 2007, and during the period from November 9, 2007 through November 21, 2007, detailed above. Although each partial disclosure removed a portion of the artificial inflation from the Debentures' prices, the prices that Plaintiffs' paid for their Debentures remained artificially inflated until the truth regarding Countrywide's financial status was fully revealed on November 21, 2007.

698.    Defendants' materially false and misleading statements in their press releases, SEC filings and other public statements during the Relevant Period proximately caused Plaintiffs' losses.

## XII.    GROUP PLEADING

699.    The Individual Defendants are liable for the materially false and misleading statements pleaded herein that were issued by, in the name of, or sponsored by the Company.  Those statements were each "group-published" information, and the result of the collective actions of the Individual Defendants, each of whom was intimately involved in the day-to-day operations of Countrywide.

700.    The Individual Defendants were involved in drafting, reviewing and/or disseminating the materially false and misleading statements issued by Countrywide and approved or ratified those statements, and, therefore, adopted them as their own. Accordingly, it is appropriate to treat the Individual Defendants as a group for pleading purposes.

## XIII.  NO STATUTORY SAFE HARBOR

701.    The statutory safe harbor for certain forward-looking statements under the Private Securities Litigation Reform Act of 1995 does not apply to the misrepresentations and omissions alleged in this Complaint.  Many of the statements were not specifically identified as "forward-looking statements" when made.  To the extent that any statements were identified as forward-looking statements, Defendants' failed to include meaningful cautionary language that specifically identified the important then-present factors that could and did cause actual results to differ materially from those in the purportedly forward-looking statements.

702.    Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statement pleaded herein, Defendants are liable nonetheless because at the time each of the misrepresentations was made, the particular speaker(s) knew that the statement was materially false or misleading at that time, and/or the forward-looking statement was authorized and/or approved by an executive officer of Countrywide who knew that the statement was materially false and misleading when made.

703.    Any warnings or other cautionary language contained in the press releases and other public statements described herein were generic, "boilerplate" statements of risk that would affect any similar company, and failed to disclose the specific problems affecting the Company.  As such, any forward-looking statements complained of herein were not accompanied by meaningful cautionary language.  Any relevant purported risk disclosures were, in fact, false and misleading in and of themselves, by virtue of the fact

that the events which the risk disclosures purported to warn against as contingencies had

already become a reality or a certainty.

## XIV.  TOLLING OF THE STATUTE OF LIMITATIONS

704.   Any applicable statute(s) of limitations with respect to Plaintiffs' claims

were tolled no later than October 30, 2007, by the filing of the class action complaint in

the action captioned *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide

Financial Corp., et al.*, 07-cv-7-09 (C.D. Cal.), as amended on December 3, 2008,

pursuant to the doctrine announced in *American Pipe v. & Construction Co. v. Utah*, 414

U.S. 538, 552 (1974).  Thus, Plaintiffs timely filed their claims.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Violation of § 10(b) of The Securities Exchange Act of 1934
And Rule 10b-5 Promulgated Thereunder Against All Defendants**

705.   Plaintiffs repeat and reallege each and every paragraph above as if fully set

forth herein.

706.   The Series A Debentures and Series B Debentures are "securities" within

the meaning of the Exchange Act.

707.   During the Relevant Period, Defendants used the means and

instrumentalities of interstate commerce, including the U.S. mails and interstate

telephone communications to:  (i) deceive Plaintiffs as alleged herein; (ii) artificially

inflate and maintain the market price of the Countrywide Debentures; and (iii) cause

Plaintiffs to purchase the Debentures at artificially inflated prices that did not reflect their true value.

708.    Defendants, individually and in concert, directly and indirectly, by the use of means and instrumentalities of interstate commerce, including the U.S. mails and interstate telephone communications:  (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon Plaintiffs, in violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.  The Individual Defendants also are sued as controlling persons of Countrywide, as alleged below in Plaintiffs' Second Claim for Relief.

709.    The Individual Defendants' primary liability, and controlling person liability, arises from the following facts, among others:  (i) the Individual Defendants were high-level executives and directors at the Company during the Relevant Period; (ii) the Individual Defendants were privy to and participated in the creation, development and reporting of the Company's materially false and misleading statements and omissions of material facts, including, without limitation, those contained in Countrywide's SEC filings, internal budgets, plans, projections and reports; and (iii) the

Individual Defendants were aware of the Company's dissemination of information that they either knew, or recklessly disregarded, was materially false and misleading.

710.   Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with deliberate reckless was in disregarding the truth by failing to ascertain and to disclose such facts, even though such facts were readily available to them.  Defendants' material misrepresentations and omissions were made knowingly, or with deliberate recklessness, and for the purpose and effect of concealing the truth with respect to Countrywide's policies, operations, business, performance and prospects and supporting the artificially inflated price of its Debentures.

711.   The dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, artificially inflated the market price of Countrywide Debentures during the Relevant Period.  In ignorance of the fact that the market prices of Countrywide Debentures were artificially inflated, and relying directly on the materially false and misleading statements made by Defendants, or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed by Defendants during the Relevant Period, Plaintiffs purchased Countrywide Debentures during the Relevant Period at artificially inflated prices.  As the truth eventually emerged, the price of the Countrywide Debentures fell.

712.   Had Plaintiffs known the truth with respect to Countrywide's business, operations, performance and prospects, which Defendants concealed and

misrepresented, Plaintiffs would not have purchased the Countrywide's Debentures or would not have purchased such Debentures at the prices they paid.

713.   By virtue of the foregoing, Defendants have violated § 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

714.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their transactions in the Company's Debentures during the Relevant Period.

## SECOND CLAIM FOR RELIEF

### Violation of § 20(a) of The Securities Exchange Act of 1934 Against the Individual Defendants

715.   Plaintiffs repeat and reallege each and every paragraph above as if fully set forth herein.

716.   During the Relevant Period, the Individual Defendants, as senior executive officers and directors of Countrywide, exercised day-to-day control over the management of the Company and had regular access to non-public information about the Company's business, operations, performance and prospects through access to internal corporate documents and information, conversations and connections with other corporate officers and employees, attendance at management meetings and the Company's Board of Directors, and committees thereof, and reports and other information provided to them in connection therewith.

717.   The Individual Defendants, because of their high-level positions with the Company, controlled and/or possessed the authority to control the content of the various

SEC filings, press releases and other public statements made by the Company during the Relevant Period.  By reason of their high-level management and Board positions, the Individual Defendants had the ability and opportunity to review copies of Countrywide's SEC filings, reports and press releases alleged herein to be materially false and misleading, prior to, or shortly after, their issuance, or to prevent their issuance or cause them to be corrected.

718.   Given their possession of the information described above, the Individual Defendants knew or recklessly disregarded the risks associated with originating subprime loans and, consequently, the liability the Company faced as a result of sharply rising default and delinquency rates associated with these types of loans.  Accordingly, Defendants knew or recklessly disregarded that the statements complained of herein were materially false and misleading, and/or omitted material facts, when made.

719.   Each of the Defendants is liable as a direct participant and primary violator with respect to the wrongdoing complained of herein.  In addition, the Individual Defendants, by reason of their status as senior executive officers and directors, were "controlling persons" within the meaning of § 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein, and exercised the same.  Because of their positions of control, the Individual Defendants were able to, and did, directly and indirectly, control the day-to-day conduct of Countrywide's business and its public statements.

720.   The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, SEC filings and other statements alleged by Plaintiffs to have been materially false and misleading prior to and/or shortly after those statements were issued.  The Individual Defendants had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

721.   In particular, as set forth in more detail above, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company through, among other ways, their:  (i) duties as the highest-level officers of the Company; (ii) positions on numerous Board committees directly responsible for overseeing, monitoring and strategizing about the Company's business activities, credit risk management, allowance for loan losses and compliance with liquidity requirements; (iii) receipt of reports from the Exception Processing System informing them of exceptions to underwriting and lending guidelines; and (iv) attendance at regular meetings informing them of the Company's significant credit risk exposure and resulting losses from the Company's undisclosed imprudent lending practices.  Therefore, the Individual Defendants are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

722.   As set forth above, Countrywide and the Individual Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5, thereunder, by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling

persons, the Individual Defendants are also liable pursuant to § 20(a) of the Exchange Act.

723.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their transactions in the Company's Debentures during the Relevant Period.

### THIRD CLAIM FOR RELIEF

**Violation of Sections 25400(d) and 25500**
**Of The California Corporations Code Against Defendant Countrywide**

724.   Plaintiffs repeat and reallege each and every paragraph above as if fully set forth herein, except that Plaintiffs do not incorporate any of the allegations in the foregoing paragraphs that allege that Plaintiffs relied upon any of Defendants' misstatements or omissions in purchasing the Debentures.

725.   The Series A Debentures and Series B Debentures are "securities" within the meaning of Section 25019 of the California Corporations Code.

726.   Defendant Countrywide is a "person" within the meaning of Section 25013 of the California Corporations Code.   During the Relevant Period, Countrywide was located in the State of California.

727.   As alleged herein, Defendant Countrywide, in the State of California, made untrue statements of material facts and engaged in acts, practices, and a course of conduct which operated as a fraud and deceit upon Plaintiffs, in order to induce the purchase of the Debentures by Plaintiffs.   In this regard, Countrywide sold or offered for sale the Debentures in the State of California during the Relevant Period or willfully

participated in such sales or offerings for sale to Plaintiffs.  Countrywide offered to sell or sold the Debentures to Plaintiffs by means of written and/or oral communications which included untrue statements of material fact.

728.    Accordingly, for the purpose of inducing Plaintiffs to purchase the Debentures, Countrywide made statements which were, at the time and in light of the circumstances under which they were made, false and misleading with respect to material facts, and which Countrywide knew or had reasonable grounds to believe were false and misleading.

729.    Plaintiffs purchased the Debentures during the Relevant Period at prices which were artificially inflated by Countrywide's materially false and misleading statements, and thereby suffered damages.  At the time of their purchases, the fair market value of the Debentures was substantially less than the price paid by Plaintiffs.

730.    By reason of the foregoing, Countrywide violated Section 25400(d) of the California Corporations Code and is liable to Plaintiffs pursuant to Section 25500 of the California Corporations Code.

### FOURTH CLAIM FOR RELIEF

**Violation of Section 25504.1 of The California
Corporations Code Against Defendant Countrywide**

731.    Plaintiffs repeat and reallege each and every paragraph above as if fully set forth herein, except that Plaintiff does not incorporate any of the allegations in the foregoing paragraphs that allege that Plaintiffs relied upon any of Defendants' misstatements or omissions in purchasing the Debentures.

732.   This Count arises from violations of Section 25401 of the California Corporations Code, committed by Lehman, Citigroup and BofA Securities in their capacity as a Joint Book Running Managers for the Debentures Offering, in the State of California.

733.   The Series A and Series B Debentures are "securities" within the meaning of Section 25019 of the California Corporations Code.

734.   Lehman, Citigroup and BofA Securities, as well as Defendant Countrywide, are "persons" within the meaning of Section 25013 of the California Corporations Code.

735.   During the Relevant Period, Lehman, Citigroup and BofA Securities, maintained offices and conducted operations in the State of California.  The Debentures were sold and/or offered for sale by these firms in their capacity as Joint Book Running Managers, in the State of California, by means of written and oral communications which included untrue statements of material facts.

736.   Plaintiffs Centaur Ltd., Argent L.P., Argent LowLev, Argentum Ltd., Acuity Master Fund, Carlyle, Lyxor/Acuity Fund, Polygon, Rhapsody Fund, Arpeggio Fund, Radcliffe, Tempo, Canyon Arbitrage, Canyon Value (Cayman), Canyon MAC, Canyon Value, Lyxor/Canyon, GLG, Mohican, ADI Arbitrages, ADI Convex, ADI Absolu, Kallista, CASAM RHP, Ramius, RCG, S.A. C. Arbitrage, Stark, and Steelhead purchased the Debentures during the Relevant Period directly from the Joint Book Running Managers at prices which were artificially inflated.

737.   By reason of the foregoing, the Joint Book Running Managers violated Section 25401 of the California Corporations Code and are liable to the Plaintiffs identified in this Claim for Relief pursuant to Section 25501 of the California Corporations Code.

738.   For the reasons set forth herein, during the Relevant Period, Countrywide materially assisted the Joint Book Running Managers in violating Section 25401 of the California Corporations Code, with the intent (i) to deceive or defraud Plaintiffs, (ii) to induce Plaintiffs to rely on representations Countrywide knew to be materially false or misleading, and (iii) to induce Plaintiffs to purchase the Debentures based upon such misrepresentations.  In this regard, Countrywide materially assisted the Joint Book Running Managers in selling the Debentures by false and misleading statements, and intended to induce Plaintiffs to rely on representations known by Countrywide to be false and misleading.

739.   By reason of the foregoing, Countrywide is jointly and severally liable to Plaintiffs under Section 25504.1 of the California Corporations Code.

## FIFTH CLAIM FOR RELIEF

### Fraud and Deceit Under
### California Law Against All Defendants

740.   This Count is asserted against Defendants for fraud and deceit, under the law of the State of California on behalf of Plaintiffs who received the May 16, 2007 Offering Memorandum.  Plaintiffs repeat and reallege each and every paragraph above as if fully set forth herein.

741.   The violations of law committed by Defendants impacted Plaintiffs and occurred in California.  Thus, the common law of the State of California is applicable to claims of the Plaintiffs as set forth in this Count.

742.   The elements for fraud and deceit in California are: (1) a misrepresentation; (2) defendants' knowledge of the statement's falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages suffered by the Plaintiffs.

743.   Countrywide made material misrepresentations of facts as set forth in this Complaint, which it knew to be or should have known to be false.

744.   Plaintiffs, without knowledge of the falsity of Defendants' material misstatements and of the material omissions described above in this Complaint, and believing such statements to be true and complete, and in reasonable and justifiable reliance upon the statements and representations made by Defendants, purchased the Countrywide Debentures.  Plaintiffs would not have purchased the Debentures during the Relevant Period, except for their reliance upon the misrepresentations made by Defendants.

745.   At the time the statements and representations alleged to be actionable were made by Defendants, they were false, Defendants knew them to be false and they intended to deceive Plaintiffs by making such statements and representations.

746.   At the time of the false statements, misrepresentations and omissions, set forth above, Defendants intended that investors act on the basis of their misrepresentations and omissions in deciding whether to purchase the Countrywide

Debentures.  Plaintiffs reasonably relied thereon to their detriment in making such decisions.

747.   Had Plaintiffs known of the material facts, which Defendants wrongfully concealed and misrepresented, and the falsity of Defendants' representations, Plaintiffs would not have made any such purchases of the Debentures.

748.   In purchasing the Debentures at artificially inflated prices, Plaintiffs suffered damages.

749.   Defendants are, therefore, liable for fraud and deceit.

750.   Moreover, misstatements and omissions of the Defendants were the result of malice, oppression and fraud within the meaning of Cal. Civil Code § 3294, entitling Plaintiffs to an award of punitive or exemplary damages.

### SIXTH CLAIM FOR RELIEF

**Negligent Misrepresentation Under
California Law Against All Defendants**

751.   This Count is asserted against Defendants for negligent misrepresentation, under the common law of the State of California.  Plaintiffs repeat and reallege each and every paragraph above as if fully set forth herein.

752.   The elements for common law negligent misrepresentation in California are: (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with the intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentations; and (5) resulting damages.

263

753.   Defendants were required to provide the public with truthful and accurate information, and owed a duty to Plaintiffs, as members of a limited class of investors eligible to purchase the Debentures, to provide truthful and accurate information upon which to base an informed investment decision.

754.   As set forth in this Complaint, Defendants made material misrepresentations to Plaintiffs through the public dissemination of false and misleading statements and omissions of material information in statements disseminated to the public.  Defendants knew of should have known that such statements, which were disseminated to the public through public filings, press releases, news articles and other publicly available information, were false and misleading, thereby violating their duty to Plaintiffs.

755.   Plaintiffs, without knowledge of the falsity of Defendants' material misstatements and omissions of fact described herein, and believing such statement to be true and accurate, and in reasonable and justifiable reliance upon the statements and representations made by Defendants purchased the Countrywide Debentures.  Plaintiffs would not have purchased Countrywide Debentures during the Relevant Period, except for their reliance upon the misrepresentations made by Defendants.

756.   Defendants knew or should have known that Plaintiffs would rely on Defendants' misrepresentations in determining whether or not to purchase the Debentures.  Information regarding Countrywide's underwriting and lending practices,

264

liquidity and overall financial condition is exactly the type of information that an investor would rely on in determining whether or not to purchase the Debentures.

757.   Plaintiffs reasonably relied on Defendants' misrepresentations and omissions regarding Countrywide's true financial condition to their detriment in making such decisions.  Had Plaintiffs known of the material facts which the Defendants wrongfully concealed and misrepresented, and the falsity of the Defendants' representations, Plaintiffs would not have purchased the Debentures during the Relevant Period.

758.   By purchasing Countrywide's Debentures at inflated prices, Plaintiffs suffered damages.

759.   Defendants are, therefore, liable for negligent misrepresentation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief and judgment:

A.     Awarding compensatory damages in favor of Plaintiffs against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be determined at trial, including pre-judgment and post-judgment interest, as allowed by law;

B.     Awarding punitive damages in favor of Plaintiffs against all Defendants, jointly and severally, for the fifth cause of action fraud and deceit;

C.     Awarding Plaintiff its costs and expenses in this action, including counsel fees and expert fees; and

1      D.    Such other and further relief as the Court may deem just and proper.

2

3    Dated:  July 30, 2010

4                                              MARC M. SELZER
                                               SUSMAN GODFREY L.L.P.
5

6                                              ANDREW J. ENTWISTLE
                                               WILLIAM S. GYVES
7                                              ROBERT N. CAPPUCCI
                                               JOHNSTON de F. WHITMAN, JR.
8                                              JONATHAN H. BEEMER
                                               ENTWISTLE & CAPPUCCI LLP
9

10

11

12                                             By _Marc M. Seltzer_____
                                                     Marc M. Seltzer
13                                               Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        266

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

Dated:  July 30, 2010

MARC M. SELZER
SUSMAN GODFREY L.L.P.

ANDREW J. ENTWISTLE
WILLIAM S. GYVES
ROBERT N. CAPPUCCI
JOHNSTON de F. WHITMAN, JR.
JONATHAN H. BEEMER
ENTWISTLE & CAPPUCCI LLP

By_____
Marc M. Seltzer
Attorneys for Plaintiffs

267

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV10- 5699 PSG (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

COPY

Name & Address:
Marc M. Seltzer (54534) - Tel: (310) 789-3100
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| CENTAUR CLASSIC CONVERTIBLE ARBITRAGE FUND LTD., [See Attachment] | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV10 5699** PSG (SHx) |
| v. | |
| COUNTRYWIDE FINANCIAL CORPORATION (n/k/a Bank of America Home Loans), ANGELO R. MOZILO, DAVID SAMBOL, [See Attachment] DEFENDANT(S). | **SUMMONS** |

TO:   DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Marc M. Seltzer_ _____, whose address is _Susman Godfrey L.L.P., 1901 Avenue of the Stars, Ste. 950, Los Angeles, CA 90067_ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   __JUL 30 2010__   By: _____

**CHRISTOPHER POWERS**

Deputy Clerk

*(Seal of the Court)*

SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# ATTACHMENT TO SUMMONS

CENTAUR CLASSIC CONVERTIBLE ARBITRAGE FUND LTD., ARGENT CLASSIC CONVERTIBLE ARBITRAGE FUND II L.P., ARGENT LOWLEV CONVERTIBLE ARBITRAGE FUND II LLC, CENTAUR LOWLEV ARBITRAGE FUND LTD., ARGENTUM MULTI-STRATEGY FUND LLC, ARGENTUM MULTI-STRATEGY FUND LTD., LYXOR/ARGENT LOW LEVERAGE FUND LIMITED, HFR CA GLOBAL SELECT MASTER TRUST, ACUITY MASTER FUND, LTD., CARLYLE MULTI-STRATEGY MASTER FUND LIQUIDATING TRUST, LYXOR/ACUITY FUND LIMITED, POLYGON GLOBAL OPPORTUNITIES MASTER FUND, RHAPSODY FUND, L.P., ARPEGGIO FUND, NUVEEN MULTI-STRATEGY INCOME AND GROWTH FUND, NUVEEN MULTI-STRATEGY INCOME AND GROWTH FUND 2, RADCLIFFE SPC, LTD., TEMPO MASTER FUND L.P., CANYON CAPITAL ARBITRAGE MASTER FUND, LTD., THE CANYON VALUE REALIZATION FUND (CAYMAN), LTD., CANYON VALUE REALIZATION MAC 18, LTD., CANYON VALUE REALIZATION FUND, L.P., LYXOR/CANYON CAPITAL ARBITRAGE FUND LIMITED, GLG MARKET NEUTRAL FUND, MOHICAN VCA MASTER FUND, LTD., ADI ARBITRAGES ABSOLU, ADI CONVERT ABSOLU, ADI CONVEX, ADI CONVEX ABSOLU, KALLISTA CB ARBITRAGE FUND LIMITED, CASAM ADI CB ARBITRAGE LIMITED, DELTA INSTITUTIONAL, L.P., DELTA ONSHORE, L.P., DELTA PLEIADES, L.P., DELTA OFFSHORE MASTER, LTD., RHP MASTER FUND, LTD., HFR CA LAZARD RATHMORE MASTER TRUST, RAMIUS CONVERTIBLE ARBITRAGE MASTER FUND LTD., RCG PB, LTD., S.A.C. ARBITRAGE FUND, LLC; STARK MASTER FUND LTD., STEELHEAD PATHFINDER MASTER L.P., CAMULOS MASTER FUND L.P., CONCORDIA PARTNERS

1

1  L.P., CONCORDIA INSTITUTIONAL
   MULTI-STRATEGIES LTD., and
2  CONCORDIA MAC 29, LTD.,

3                    Plaintiffs,

4           vs.

5  COUNTRYWIDE FINANCIAL
   CORPORATION (n/k/a Bank of America
6  Home Loans), ANGELO R. MOZILO,
   DAVID SAMBOL, and ERIC P.
7  SIERACKI,

8                    Defendants.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**COPY**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| CENTAUR CLASSIC CONVERTIBLE ARBITRAGE FUND LTD., et al. | COUNTRYWIDE FINANCIAL CORPORATION (n/k/a Bank of America Home Loans), ANGELO R. MOZILO, DAVID SAMBOL, and ERIC P. SIERACKI |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Marc M. Seltzer (54534); E-Mail: mseltzer@susmangodfrey.com SUSMAN GODFREY L.L.P., 1901 Avenue of the Stars, Ste. 950 Los Angeles, CA 90067-6029; Tel: (310) 789-3100 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** To be proven at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. Sections 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder for securities fraud.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV10 5699

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): CV 07-05295 MRP (MANx); CV 07-07097 MRP (MANx); 2:10-cv-00302 MRP (MANx); CV 09-03994 JFW (MANx)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☑ A. Arise from the same or closely related transactions, happenings, or events; or
       ☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
       ☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
       ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | George Town, Grand Cayman, Cayman Islands - Plaintiff Centaur Classic Convertible Arbitrage Fund Ltd. [See Attachment] |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County - Defendant Countrywide Financial Corporation has its principal place of business in Calabasas, California [Los Angeles County] [See Attachment] |  |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):**  _Marc M. Seltzer_   Date July 30, 2010

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# ATTACHMENT TO CIVIL COVER SHEET

## Section IX.  Venue

| (a)<br>Named Plaintiffs | (a)<br>County, State if other than California, or Foreign Country in which EACH named plaintiff resides |
|---|---|
| Centaur Classic Convertible Arbitrage Fund Ltd. | Cayman Islands |
| Argent Classic Convertible Arbitrage Fund II L.P. | Delaware |
| Argent LowLev Convertible Arbitrage Fund II LLC | Delaware |
| Centaur LowLev Arbitrage Fund Ltd. | Cayman Islands |
| Argentum Multi-Strategy Fund LLC | Delaware |
| Argentum Multi-Strategy Fund Ltd. | Cayman Islands |
| Lyxor/Argent Low Leverage Fund Limited | Channel Islands |
| HFR CA Global Select Master Trust | Bermuda |
| Acuity Master Fund, Ltd. | British Virgin Islands |
| Carlyle Multi-Strategy Master Fund Liquidating Trust | Delaware |
| Lyxor/Acuity Fund Limited | Channel Islands |
| Polygon Global Opportunities Master Fund | Cayman Islands |
| Rhapsody Fund, L.P. | San Francisco County, California |
| Arpeggio Fund | San Francisco County, California |

1

| (a)<br>Named Plaintiffs | (a)<br>County, State if other than California, or Foreign Country in which EACH named plaintiff resides |
|---|---|
| Nuveen Multi-Strategy Income and Growth Fund | Massachusetts |
| Nuveen Multi-Strategy Income and Growth Fund 2 | Massachusetts |
| Radcliffe SPC, Ltd. | Cayman Islands |
| Tempo Master Fund L.P. | Cayman Islands |
| Canyon Capital Arbitrage Master Fund, Ltd. | Cayman Islands |
| The Canyon Value Realization Fund (Cayman), Ltd. | Cayman Islands |
| Canyon Value Realization MAC 18, Ltd. | Cayman Islands |
| Canyon Value Realization Fund, L.P. | Delaware |
| Lyxor/Canyon Capital Arbitrage Fund Limited | Channel Islands |
| GLG Market Neutral Fund | Cayman Islands |
| Mohican VCA Master Fund, Ltd. | Cayman Islands |
| ADI Arbitrages Absolu | France |
| ADI Convert Absolu | France |
| ADI Convex | France |
| ADI Convex Absolu | France |
| Kallista CB Arbitrage Fund Limited | Cayman Islands |
| CASAM ADI CB Arbitrage Limited | Cayman Islands |

2

| (a)<br>Named Plaintiffs | (a)<br>County, State if other than California, or Foreign Country in which EACH named plaintiff resides |
|---|---|
| Delta Institutional, L.P. | Delaware |
| Delta Onshore, L.P. | Delaware |
| Delta Pleiades, L.P. | Delaware |
| Delta Offshore Master, Ltd. | Cayman Islands |
| RHP Master Fund, Ltd. | Cayman Islands |
| HFR CA Lazard Rathmore Master Trust | Bermuda |
| Ramius Convertible Arbitrage Master Fund Ltd. | Cayman Islands |
| RCG PB, Ltd. | Cayman Islands |
| S.A.C. Arbitrage Fund, LLC | British West Indies |
| Stark Master Fund Ltd. | British Virgin Islands |
| Steelhead Pathfinder Master, L.P. | Cayman Islands |
| Camulos Master Fund L.P. | Cayman Islands |
| Concordia Partners L.P. | Bermuda |
| Concordia Institutional Multi-Strategies Ltd. | Bermuda |
| Concordia MAC 29 Ltd. | Cayman Islands |
| | |

3

| (b)<br>Named Defendants | (b)<br>County, State if other than California, or Foreign Country in which EACH named defendant resides |
| --- | --- |
| Countrywide Financial Corporation (n/k/a Bank of America Home Loans) | Delaware |
| Angelo R. Mozilo | Unknown |
| David Sambol | Unknown |
| Eric P. Sieracki | Unknown |
| | |

4