Lloyd Winawer (SBN 157823)
*lwinawer@goodwinprocter.com*
**GOODWIN PROCTER LLP**
601 South Figueroa Street, 41st Floor
Los Angeles, California 90017-5704
Telephone: 213-426-2500
Facsimile: 213-623-1673

Brian E. Pastuszenski (*pro hac vice*)
*bpastuszenski@goodwinprocter.com*
John O. Farley (*pro hac vice*)
*jfarley@goodwinprocter.com*
Brian C. Devine (SBN 222240)
*bdevine@goodwinprocter.com*
**GOODWIN PROCTER LLP**
53 Exchange Place
Boston, Massachusetts 02109
Telephone: 617-570-1000
Facsimile: 617-523-1231

*Attorneys for Defendant*
Countrywide Financial Corporation

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTAUR CLASSIC CONVERTIBLE ARBITRAGE FUND LTD., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTRYWIDE FINANCIAL CORP., ANGELO R. MOZILO, DAVID SAMBOL, and ERIC P. SIERACKI,<br><br>Defendants, | Case No. CV10-05699-MRP (MANx)<br><br>**COUNTRYWIDE FINANCIAL CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INJUNCTION BARRING PLAINTIFFS FROM RELITIGATING IN STATE COURT ISSUES ALREADY FINALLY DECIDED BY THIS COURT**<br><br>Date: June 27, 2011<br>Time: 11:00AM<br>Judge: Hon. Mariana R. Pfaelzer<br>Courtroom: 12 |

Countrywide Financial Corporation ("Countrywide") submits this memorandum in support of its motion for a permanent injunction barring Plaintiffs from relitigating in state court issues already finally decided by this Court pursuant to Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651 ("All Writs Act") and 28 U.S.C. § 2283 ("Anti-Injunction Act").

## PRELIMINARY STATEMENT

On January 20, 2011, this Court dismissed with prejudice as time-barred Plaintiffs' California state law claims against Countrywide and the individual defendants (collectively "Defendants"). In an attempt to end-run this Court's ruling, Plaintiffs have filed a new complaint asserting *all* the same California law claims found in their federal court complaint based on *exactly* the same factual allegations against *exactly* the same parties, but this time in California Superior Court. *See Centaur Classic Convertible Arbitrage Fund Ltd., et al. v. Countrywide Financial Corporation*, *et al.*, Los Angeles Superior Court Docket No. BC455745 ("State Action"). Because the State Action seeks to relitigate and undermine a final adjudication on the merits rendered by this federal Court, it is within the Court's discretion to enjoin that suit from going forward in order to protect the integrity of the Court's ruling and of the federal judicial process itself. Moreover, a permanent injunction is necessary to prevent this grossly improper state court litigation from causing Countrywide irreparable harm. Absent an injunction, Countrywide would be forced to continue to defend at substantial expense claims which already have been resolved in its favor, and would be needlessly exposed to the prospect of inconsistent rulings. For these reasons, Plaintiffs should be enjoined from continuing to pursue the State Action.

## FACTUAL BACKGROUND

On July 7, 2010, 46 institutional investors (all sophisticated hedge and arbitrage funds) invoked this Court's jurisdiction by filing a complaint in this Court captioned *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corporation*, No. Cv. 10-05699-MRP (MANx) ("Federal Action"). Ex. A (Federal Action

Complaint). The Federal Action asserted claims under both the federal securities laws and California state law (for alleged violations of §§ 25400(d), 25500 and 25504.1 of the California Corporations Code and for common law fraud and negligent misrepresentation). On January 20, 2011, this Court granted Countrywide's motion to dismiss the Complaint in its entirety, holding that "the state law claims are barred by their respective statutes of limitation." Accordingly, the Court dismissed all four state law claims with prejudice. Ex. B (Jan. 20, 2011 Order) at 4.

On February 22, 2011, 43 of the original 46 institutional investor plaintiffs, plus two new plaintiffs (Sandelman Partners Multistrategy Master Fund Ltd. and Sandelman Partners Opportunity Master Fund L.P. ("Sandelman Funds") (collectively "Plaintiffs")), filed an amended complaint in the Federal Action, asserting only alleged violations of the federal securities laws and dropping the dismissed state law claims. Also on that date, the parties to the Federal Action stipulated that the Sandelman Funds would be allowed to join the case as plaintiffs, contingent upon their being "bound by the rulings contained in the January 20, 2011 Order to the same extent as the other Plaintiffs." Pursuant to that stipulation and this Court's order, dated February 22, 2011, the Sandelman Funds were allowed to join the case. A second amended complaint, including the Sandelman Funds among the 45 Plaintiffs (the "Federal SAC"), was filed on February 24, 2011. The Defendants have since moved to dismiss the Federal SAC. Those motions are fully briefed and are before the Court.

The amended complaint in the Federal Action, however, was not the only complaint filed on February 22, 2011. On that same day, represented by the same counsel, 44 of the 46 original plaintiffs in the Federal Action, plus the Sandelman Funds, filed the complaint in the State Action. The State Action seeks to relitigate the *same* state law claims against the *same* Defendants based on the *same* facts that this

Court has dismissed with prejudice.[1]

The complaints in the State Action and the Federal Action contain nearly word-for-word identical factual allegations. Four causes of action in both complaints are identical (claims under §§ 25400(d), 25500 and 25504.1 of the California Corporations Code and for common law fraud and negligent misrepresentation). These are *precisely* the same state law claims that this Court dismissed with prejudice on January 20, 2011. *See* Ex. A (Federal Action Complaint), at ¶¶ 724-59; Ex. C (State Action Complaint) at ¶¶ 825-60; Ex. B (Jan. 20, 2011 Order). The State Action alleges that the exact same factual allegations asserted in the Federal Action also constitute violations of § 17200 of the California Business and Professions Code (the "UCL"), which prohibits unfair and deceptive business acts. But the UCL claim is simply an attempt to "attac[h] a different legal label to an issue . . . that has . . . been litigated" already in federal court. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077-78 (9th Cir. 2003). These "new" claims are wholly derivative of the dismissed state law claims, are based on the *exact* same factual allegations as the dismissed claims, and could and should have been asserted in the Federal Action.[2]

In short, the State Action is the same case that was dismissed with prejudice by this Court, and every single plaintiff in the State Action is bound by this Court's January 20, 2011 Order of Dismissal. After losing in this Court, Plaintiffs have gone shopping for another court in the hope of obtaining a result they might like better. But parties may not relitigate the same issues in one court after litigating and losing in another. The Plaintiffs' improper attempt to do so is causing immediate and irreparable harm to Countrywide. Moreover, were litigants able to ignore a federal

---

[1] For the Court's convenience, Appendix A to this memorandum identifies in tabular format each plaintiff in each of the state and federal court complaints.

[2] The California courts, however, have held that the UCL does not apply to securities transactions. *See* note 6 *infra*.

court's rulings in this manner, the very premise on which the federal court system functions—respect for and compliance with its orders and judgments—would be eviscerated. For all these reasons, a permanent injunction is both appropriate and necessary, and Countrywide respectfully urges the Court to enjoin the Plaintiffs from continuing to pursue the State Action.

## ARGUMENT

### I. INJUNCTIVE RELIEF IS PROPER UNDER THE "RELITIGATION EXCEPTION" TO THE ANTI-INJUNCTION ACT.

Injunctive relief barring continuation of the State Action is proper under the "relitigation exception" to the Anti-Injunction Act, 28 U.S.C. § 2283. Although the Anti-Injunction Act generally limits the ability of a federal court to enjoin a state court proceeding, it contains three exceptions:

> A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or *to protect or effectuate its judgments*.

*Id*. (emphasis added). This matter falls squarely within the third exception, also known as the "relitigation exception." Indeed, the United States Supreme Court has held that enjoining matters such as the State Action is the very *purpose* of the relitigation exception:

> The relitigation exception was *designed* to permit a federal court to *prevent* state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of *res judicata* and collateral estoppel.

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988) (emphasis added). Thus, in the words of the Ninth Circuit, under the relitigation exception this Court may enjoin a state court action to prevent precisely the improper conduct these Plaintiffs here are engaged in: "the harassment of successful federal litigants through repetitious

state litigation." *Amwest Mortgage Corp. v. Grady,* 925 F.2d 1162, 1164 (9th Cir. 1991).

In the Ninth Circuit, the relitigation exception permits a federal district court to enjoin state court litigation if "there *could be* an *actual conflict* between the subsequent state court judgment and the prior federal judgment." *G.C. and K.B. Inv., Inc. v. Wilson*, 326 F.3d 1096, 1107 (9th Cir. 2003) (emphasis added). That is plainly the case here. In fact, Plaintiffs filed the State Action for the *purpose* of creating a direct and irresolvable conflict—the relief they seek from the State Court is a ruling permitting the same state law claims this Court dismissed as untimely to go forward.

More specifically, in *Wilson* the Ninth Circuit upheld an injunction granted under the relitigation exception when there was a possibility of a conflict between an existing decision by the federal district court and a subsequently filed state court action. *Id.* at 1107. Central District Judge Phillips entered an order confirming an arbitration award against defendants. Defendants then filed suit in state court in Hawaii, attempting to overturn the arbitration award. Judge Phillips enjoined the Hawaiian suit pursuant to the relitigation exception. The Ninth Circuit affirmed, holding that the defendants' Hawaiian lawsuit was "clearly an attempt to circumvent the enforcement of the district court's judgment" which posed "an actual conflict—not just a possible one." *Id.* This conflict triggered the relitigation exception and placed an injunction within the district court's discretion. *Id.*[3]

This is precisely the situation here. By filing the State Action, Plaintiffs seek to defy and undermine this Court's determination that the same claims they have refiled

[3] *Accord Chick Kam Choo*, 486 U.S. at 143-51 (affirming federal district court's injunction of Texas state court action because district court already had held that Singapore law applied: "Because in its 1980 decision the District Court decided that Singapore law must control petitioner's lawsuit, a decision that necessarily precludes the application of Texas law, an injunction preventing relitigation of that issue in state court is within the scope of the relitigation exception" and "an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court").

in state court are time-barred. Even more so than in *Wilson*, it is impossible for the State Action to proceed without immediately giving rise to an "actual conflict" with this Court's dismissal order. Solely on the basis of an "actual conflict," Plaintiffs should be enjoined from proceeding with the State Action. *Id.*

In addition, under the relitigation exception, "[e]ven if no actual conflict is possible, an injunction could still be proper if *res judicata* would bar the state court proceedings." *Id.* (internal quotations omitted); *accord Blalock Eddy Ranch v. MCI Telecomm. Corp.,* 982 F.2d 371, 375 (9th Cir. 1992). *Res judicata* applies "whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal quotations omitted). The State Action satisfies all three prongs of the *res judicata* test, which presents another basis for immediate injunctive relief under the relitigation exception.

Identity of Claims: There is an identity of claims between the Federal Action and the State Action. Identity of claims does not require that the exact same claims be asserted in both suits; rather, identity of claims exists when two lawsuits arise from "the same transactional nucleus of facts." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001). Indeed, "[t]he fact that res judicata depends on an 'identity of claims' does not mean that an imaginative attorney may avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated." *Tahoe-Sierra*, 322 F.3d at 1077-78. Thus, even if the subsequent suit raises claims that were not asserted in the original suit, "claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims *could have been brought in the earlier action*." *Id.* (emphasis added). "It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." *United States ex. Rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998).

6

DEFENDANTS' NOTICE OF MOTION AND MEMO ISO INJUNCTION
COUNTRYWIDE'S MEMO ISO INJUNCTION BARRING RELIGITATION OF ISSUES DECIDED BY THIS COURT
Case No. 10-05699-MRP (MANx)

Here, although the State Action attempts to apply a new "legal label" (the UCL claims) to the same factual allegations (*see* Counts 5 through 8), Plaintiffs *concede* on the face of the State Action complaint that their UCL claims "could have been brought" in the Federal Action. *Id.* Specifically, Plaintiffs allege in conclusory fashion that the alleged conduct that supposedly supports each of the four state law claims dismissed by this Court on January 20, 2011 also constitutes unfair business acts in violation of § 17200. But these "new" claims are *expressly* based in their entirety on the original dismissed state law claims. For example, Plaintiffs allege that "Defendants are liable to Plaintiffs for negligent misrepresentation" and, in turn, that "Defendants' negligent misrepresentation of Countrywide's true financial condition *also constitutes* an unfair, unlawful and deceptive business act in violation of Bus. & Prof. Code § 17200 *et seq*." Ex. C (State Action Complaint) at ¶¶ 876, 877 (emphasis added). Each of Plaintiffs' UCL claims follows the same boilerplate form: each asserts that the conduct that allegedly gives rise to their California statutory securities and common law fraud and negligent misrepresentation claims which they reallege in the State Action also gives rise to violations of California's unfair competition law. This is a plain admission that all of those claims "could have been brought" in the original Federal Action. *Id.* at ¶¶ 862-63, 867-68, 872-73; *Barajas*, 147 F.3d at 909.

Moreover, the factual allegations contained in the State Action complaint are materially identical to the factual allegations that appear in the complaint in the Federal Action. Because nothing new is asserted in the State Action, it follows inevitably that the "new" claims made in the State Action could have been asserted made in the Federal Action as well.[4]

---

[4] In any event, UCL claims are also specious. In *Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 786-90 (2004), the California Court of Appeal held that the UCL simply "does not apply to securities transactions." *Accord San Fran. Res. Club, Inc., v. Amado*, C.A. No. 09-2054-RS, 2011 WL 767306, at *9 (N.D. Cal. Feb. 25, 2011) (when "plaintiffs' theory unavoidably focuses on the purchase of securities . . . *Bowen* is determinative"); *Charles O. Bradley Trust v. Zenith Capital, LLC*, C.A. No. 04-02239, 2008 WL 3400340, at *4 (N.D. Cal. Aug. 11, 2008) (plaintiffs' UCL claim

*Final Decision*: The Court's January 20, 2011 Order of Dismissal was a final decision on the merits. The state law claims were dismissed with prejudice because they were "barred by their respective statutes of limitations." Ex. B (Jan. 20, 2011 Order) at 4. The United States "Supreme Court has unambiguously stated that a dismissal on statute of limitations grounds is a judgment on the merits" for *res judicata* purposes. *Tahoe Sierra,* 322 F.3d at 1081 (citing *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 228 (1995)).[5]

*Privity*: There is privity of the parties. Privity exists when the parties are identical, when the parties are "sufficiently close," or when a non-party's interests "were represented adequately by a party in the original suit." *United States v. Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (citations and quotations omitted). Here, 44 of the State Action plaintiffs were also named plaintiffs in the Federal Action Complaint and were expressly bound by the Court's order of dismissal.[6] The two

---

regarding alleged securities fraud was "barred by the holding in *Bowen*"). These claims thus would be subject to dismissal as a matter of law in any event.

[5] Courts in other Circuits have held that because the relitigation exception is "founded in the well-recognized concepts of *res judicata* and collateral estoppel," *Chick Kam Choo*, 486 U.S. at 147, the exception may be applied only where the district court has issued a final, appealable order (for example, under Fed. R. Civ. P. 54(b)), as required under the principles of *res judicata. See, e.g. J.R. Clearwater, Inc. v. Ashland Chem., Co.,* 93 F.3d 176, 179-80 (5th Cir. 1996). The Ninth Circuit, however, has held that "[i]n determining whether the injunction . . . falls within the scope of the relitigation exception, we ***first*** examine whether there could be an actual conflict between the subsequent state court judgment and the prior federal judgment. ***If such a conflict is possible, then the district court could properly enjoin the state court proceedings***. However, ***even if no actual conflict is possible, the injunction could still be proper if res judicata would bar the state court proceedings***." *Blalock Eddy Ranch v. MCI Telecomm. Corp., 982* F.2d 371, 375 (citing *Chick Kam Choo,* 486 U.S. at 150-51). Countrywide believes that the Ninth Circuit's alternative formulation of this standard makes clear that the *res judicata* factors, including a final order, need not be met so long as an actual "conflict is possible." *Id.* That said, to avoid needless dispute with Plaintiffs over this issue, Countrywide is simultaneously moving for a certification as a final judgment under Federal Rule 54(b) of this Court's order dismissing Plaintiffs' state law claims with prejudice.

[6] One of those State Action plaintiffs, Steelhead Pathfinder Master, L.P. ("Steelhead"), is not a plaintiff in the Federal Action SAC. But that is of no consequence. Steelhead was before this Court as a plaintiff in the original Federal Action Complaint and is thus bound by the Court's January 20, 2011 Order. Even if Steelhead were not cur-

remaining State Action plaintiffs—the Sandelman Funds—did not join the Federal Action until February 22, 2011, but they stipulated and this Court ordered that they would be "bound by the rulings contained in the January 20, 2011 Order." Ex. D (Stipulation); Ex. B (Jan. 20, 2011 Order). Thus, the Sandelman Funds are in privity as well. In any event, the interests of the Sandelman Funds were adequately represented by the parties in the original Federal Action complaint; indeed, all these parties are making exactly the same claims against exactly the same defendants, and all are represented by exactly the same counsel. *See Stratosphere Litig. LLC v. Grand Casinos, Inc.*, 298 F.3d 1137, 1142 n.3 (finding privity when a party is "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved") (citation omitted).[7] In short, because *res judicata* applies, so too does the relitigation exception to the Anti-Injunction Act and the Court may and should grant injunctive relief. *See, e.g., Blalock Eddy Ranch,* 982 F.2d at 375.

## II. COUNTRYWIDE MEETS THE STANDARD.

The party seeking a permanent injunction must prove "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v.*

---

rently before the Court, this Court nonetheless would have authority to enjoin Steelhead pursuant to Fed. R. Civ. P. 65(d)(2)(C), which allows federal courts to enjoin "other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) [the parties] or (B) [the parties' officers, agents, servants, employees, and attorneys]." Indeed, the Ninth Circuit has held that "a court may enjoin non-parties whose actions threaten to interfere with prior orders of the court." *United States v. Oregon*, 470 F.3d 809, 810 n.2 (9th Cir. 2006). *See RPA Int'l Pty Ltd v. Compact Int'l Inc.*, No. 06cv1147 WQH (AJB), 2010 WL 3184311, at *9 (S.D. Cal. Aug. 11, 2010) (enjoining a limited number of non-parties including those "in active concert or participation with" the defendants).

[7] Moreover, this Court would have the power to enjoin the Sandelman Funds under Federal Rule 65(d)(2)(C) of the F. R. Civ. P. in any event. *See* note 6 *supra*.

*Geertson Seed Farms*, 130 S.Ct. 2743, 2747-48 (2010) (internal quotation omitted); *see also California v. U.S. Dep't of Agric.*, 575 F.3d 999, 1019 (9th Cir. 2009) (same). Countrywide satisfies this standard.

**A. Countrywide Continues to Suffer Irreparable Harm.**

Countrywide has incurred, and will continue to incur, irreparable harm. First, being "forced to relitigate [the same issue] a number of times, at its own expense, in various state court proceedings" is an immediate and irreparable injury. *Wilson*, 326 F.3d at 1107-08 (affirming order staying state court proceedings); *Trustees of IL WU-PMA Pension Plan v. Peters*, 660 F. Supp. 2d 1118, 1145 (N.D. Cal. 2009) (irreparable harm standard satisfied when "there is a likelihood of costly and judicially wasteful relitigation of claims and issues that were already adjudicated in federal court"); *Golden v. Pac. Mar. Ass'n,* No. CV 80-4770-RMT, 1984 WL 8145, at *6 (C.D. Cal. May 21, 1984) (expense and burden of relitigating in state court the same issues previously decided in federal court constitutes irreparable harm). The continuing cost of defending the State Action would be substantial, and Countrywide already has shouldered substantial and non-compensable expenses in connection with the State Action. *See* Declaration of Elizabeth A. Remaily In Support of Defendant's Motion for Permanent Injunction, submitted herewith, at ¶¶ 3-5. Compounding this harm is the fact that 45 of the 46 State Action plaintiffs are also pursuing claims based on the same alleged facts in federal court, needlessly forcing Countrywide to defend itself against the same parties represented by the same counsel alleging the same wrongful acts in two separate courtrooms.

Second, in addition to the cost and burden of relitigating these claims, allowing Plaintiffs to relitigate issues decided already by this Court would present the prospect of inconsistent rulings, an additional harm to Countrywide. *See, e.g., Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, (9th Cir. 1981) (affirming order enjoining plaintiffs from proceeding with suit in Canadian court because

"separate adjudications could result in inconsistent rulings or even a race to judgment"); *Crowe & Dunlevy, P.C. v. Stidham*, 609 F. Supp. 2d 1211 (N.D. Okla. 2009) (enjoining enforcement of tribal court order because risk of inconsistent rulings constituted irreparable harm).

**B. <u>No Adequate Remedy at Law Exists.</u>**

Because monetary damages are insufficient compensation for Plaintiffs' continued disregard for this Court's final decision, there is no adequate remedy at law. *See Wilson*, 326 F.3d at 1107-08 (affirming stay of state court proceedings because there was "no adequate remedy at law to prevent [defendants] from continuing to relitigate in Hawaii state court"); *U.S. Fidelity & Guar. Co. v. Lee Investments, LLC,* No. CV-F-99-5583, 2008 WL 5101540, at *17 (E.D. Cal. Dec. 2, 2008) (issuing injunction to stop defendant's strategy "to keep the federal judgment from having effect and being enforced"); *Ballinger v. Mobil Oil Corp.*, 138 Fed. Appx. 615, 622 (5th Cir. 2005) (attempt to relitigate in state court issues already decided in federal court is alone sufficient to show no adequate remedy at law).

**C. <u>The Balance of Harms Favors Immediate Injunctive Relief.</u>**

Countrywide will suffer greater harm than Plaintiffs if an injunction is not issued. Countrywide is suffering, and will continue to suffer, harm because of the significant (and needless) burden of defending a lawsuit in which the issues have already been decided and which poses the risk of inconsistent rulings. Indeed, Plaintiffs' very purpose in filing the State Action is to obtain an inconsistent ruling. This harm is greater than any harm Plaintiffs conceivably would suffer by an injunction because Plaintiffs already have had an opportunity to litigate these precise issues. An injunction here will do nothing more than enforce against Plaintiffs the judgment this Court rendered after carefully considering the arguments Plaintiffs made in opposing Countrywide's motion to dismiss their state-law claims. Requiring Plaintiffs to respect this Court's ruling is no hardship at all.

### D. The Public Interest Strongly Favors Injunctive Relief.

Plaintiffs' conduct not only harms Countrywide, but it also harms the public by undermining the authority of the federal court system and by wasting substantial judicial resources and taxpayer money. The federal judicial system cannot operate unless the judgments rendered by federal judges are respected by the parties who appear before them. The Ninth Circuit itself has said that "a smoothly functioning judicial process may be jeopardized if parties are able to determine for themselves when and how to obey court orders . . . . [B]oth the dignity of the court and the orderly functioning of the judicial system necessitate prompt adherence" to court orders. *In re Establishment Inspection of Hern Iron Works, Inc.* 881 F.2d 722, 726 (9th Cir. 1989). *See also Chick Kam Choo*, 486 U.S. at 146 (the relitigation exception to the Anti-Injunction Act was "designed to ensure the effectiveness and supremacy of federal law"); *Weyerhaeuser Co. v. Wyatt*, 505 F.3d 1104, 1110 (10th Cir. 2007) (a federal court's decision "is entitled to respect and finality," thus the relitigation exception "ensure[s] the effectiveness and supremacy of federal law" (citing *Chick Kam Choo*, 486 U.S. at 146)). The public interest in the integrity of, and respect for, orders issued by the federal courts would not be served if Plaintiffs – who invoked this Court's jurisdiction – could then subvert its authority and disregard its binding orders by shopping for different rulings in another court. This attempt to use the state court to end-run a federal court's order is not a proper substitute for seeking appellate review of this Court's orders if Plaintiffs believe they are incorrect.

Not only would Plaintiffs' conduct—if not enjoined—undermine the authority of this Court and of the federal court system generally, it also would disserve public interest by requiring wasteful, duplicative expenditure of scarce resources by two court systems. As one district court noted in enjoining state court proceedings under the relitigation exception of the Anti-Injunction Act, "[i]n an era of scarce judicial resources, particularly on the state level, it is no favor to the state court to afflict it with

additional work simply to show respect for its wisdom and processes." *California v. Randtron*, 69 F. Supp. 2d 1264, 1271 (E.D. Cal. 1999). In short, the public interest weighs in favor of granting Countrywide's request for injunctive relief.

**CONCLUSION**

Plaintiffs' filing of the State Action reflects an utter lack of respect for this Court. It also raises grave systemic concerns—the federal judicial system could not function if litigants dissatisfied with a federal judge's rulings could simply go to state court and litigate the same issues all over again, hoping to get a contrary result from a different court system. For the reasons addressed in this memorandum, Countrywide respectfully requests that this Court issue a permanent injunction barring Plaintiffs from prosecuting the State Action and thereby seeking to end-run this Court's orders, and for such other relief as the Court deems just and proper.

Dated: May 27, 2011

**GOODWIN PROCTER LLP**

/s/ Brian E. Pastuszenski
Brian E. Pastuszenski (*pro hac vice*)
Lloyd Winawer (SBN 157823)
John O. Farley (*pro hac vice*)
Brian C. Devine (SBN 222240)

***Attorneys for Defendant Countrywide Financial Corporation***

13

DEFENDANTS' NOTICE OF MOTION AND MEMO ISO INJUNCTION
COUNTRYWIDE'S MEMO ISO INJUNCTION BARRING RELIGITATION OF ISSUES DECIDED BY THIS COURT

Case No. 10-05699-MRP (MANx)